UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DIEGO MATEO JUAN AKA HUGO GOMEZ ENCINO,

Petitioner,

v.

CHRISTOPHER J. LAROSE,

Respondents.

Case No.: 26cv5420-LL-GC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

**[ECF No. 6]**

Pending before the Court is Petitioner Diego Mateo Juan's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 6. The matter is fully briefed, and the Court deems it suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1. For the reasons below, the Court **GRANTS** the Petition for Writ of Habeas Corpus (ECF No. 6) and **ORDERS** Petitioner's immediate release from custody.

/ / /

## I. BACKGROUND

Petitioner is a 50-year-old citizen of Guatemala and the father of four United States citizen children. ECF No. 6 ¶ 1. In 2019, an Immigration Judge granted him withholding of removal to Guatemala under 8 U.S.C. § 1231(b)(3) and withholding of removal under the Convention Against Torture ("CAT"). *Id.* DHS did not appeal. Removal to Guatemala is therefore barred by law. *Id.* Immigration and Customs Enforcement ("ICE") released Petitioner on an Order of Supervision the same day, and for nearly seven years he complied with every condition of that release. *Id.*

During his release, Petitioner lived in Escondido, California, worked as a self-employed construction worker, and supported his four United States citizen children. *Id.* ¶ 67 (internal citations omitted). On January 31, 2025, DHS issued him an employment authorization document valid through January 30, 2030. *Id.* He has not been arrested for or charged with any offense since his release in 2019. *Id.* At the time of his re-arrest, ICE's records reflected "no active wants or warrants." *Id.*

On February 22, 2026, Petitioner was arrested in a targeted operation against Petitioner in which they boxed in his truck on a street in Escondido. *Id.* ¶ 2. ICE issued a Notice of Revocation of Release on the day following his arrest which did not identify any "changed circumstances," and conceded that his case was merely "under current review for removal to an alternate country." *Id.* Petitioner has been in ICE custody since February 22, 2026 and Petitioner alleges that "ICE has identified no country to which Petitioner can lawfully be removed, has disclosed no request for travel documents, has never conducted a meaningful informal interview, ignored two written requests by counsel to participate in that interview, and has conducted no headquarters custody review." *Id.*

Accordingly, Petitioner brings the instant habeas Petition which alleges that his detention is unlawful for the following reasons:

> First, ICE revoked his release in violation of its own regulations, 8 C.F.R. §§ 241.4(l) and 241.13(i), and the Due Process Clause. Second, his continued detention exceeds the period reasonably necessary to effect removal and is not authorized by 8 U.S.C. § 1231(a)(6) as construed in *Zadvydas v. Davis*, 533

> U.S. 678 (2001). Third, to the extent Respondents seek to remove him to an unidentified third country, they may not do so without effective notice and a meaningful opportunity to present fear-based claims to a neutral adjudicator, as required by 8 U.S.C. § 1231(b)(3), the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), and the Due Process Clause—the same conclusion the Court of Appeals for the First Circuit reached in *D.V.D. v. U.S. Department of Homeland Security*, No. 26-1212 (1st Cir. Sept. 18, 2026).

*Id.* ¶ 3.

These failings, Petitioner argues, violated ICE's own regulations which state that:

> The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. . . . Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

*See* 8 C.F.R. §§ 241.13(i)(2)–(3), 241.4(l). The Court finds that its order on the first claim (due process) is dispositive, and therefore declines to rule on claims two (*Zadvydas*) and three (removal to a third country).

## II. DISCUSSION

The Court finds that the Government has violated its own regulations under § 241.13(i) and § 241.4(l). ICE's own regulations state in relevant part:

> The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. . . . Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

*See* 8 C.F.R. §§ 241.13(i)(2)–(3), 241.4(l). First, ICE must determine that the detainee is

significantly likely to be removed in the reasonably foreseeable future "on account of changed circumstances." § 241.13(i)(2). The Government concedes that Petitioner was not provided with written notice of his revocation of release until the day *after* he was taken into custody. ECF No. 7 ("Return") at 2. The Government further concedes that "there is no record of an informal interview." *Id.* Notwithstanding this, the Government asserts that "[s]ince Petitioner's re-detention in February 2026, ICE has worked expeditiously to identify a third country to which Petitioner may be removed." *Id.* The Government states that "on September 7, 2026, RIO authorized ICE to remove Petitioner to Mexico through the land border." *Id.*

"241.13(i)(2) requires that [the changed circumstances] determination is made before the removable alien has had his release revoked." *See Tran v. Noem*, No. 25-cv-2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025). Here, ICE did not even attempt to identify where Petitioner can be removed until after it revoked Petitioner's supervision. Accordingly, there could not have been "changed circumstances" that "there is a reasonable likelihood that the alien may be removed in the foreseeable future." § 241.13(i)(2). Additionally, even if ICE assessed the likelihood of Petitioner's removal before revoking his release, it would not have been "on account of" changed circumstances. With "no evidence of an actual determination of changed circumstances that justified the initial revocation of [Petitioner's] release," the Government has violated its own rule under § 241.13(i)(2). *See Tran*, 2025 WL 3005347, at *2.

Second, an alien must "be notified of the reasons for revocation of his or her release" that are actually "stated in the notification." § 241.13(i)(3); *see Tran*, 2025 WL 3005347, at *3 (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release"). Here, Petitioner was arrested on February 22, 2026, in a targeted operation, and the Government has conceded that Petitioner did not receive the Notice of Revocation form until the next day. Return at 2. Accordingly, the Government failed to give Petitioner a copy of this form prior to his arrest. In addition, there is nothing in the record regarding what Petitioner's arresting officers told him. The bare-bones

explanation in the Notice of Revocation of Release [ECF No. 6-5] does not contain the reasons for the revocation of Petitioner's release, thus it does not satisfy the "the due-process notification requirement of § 241.13(i)(3)." *See Tran*, 2025 WL 3005347, at *3; *see also McSweeney v. Warden of Otay Mesa Det. Facility*, Case No. 3:25-cv 02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (granting habeas petition where petitioner "could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons"); *see also Tan-Gutierrez v. Noem*, Case No.: 3:26-cv-00152-RBM-BJW, 2026 WL 194747, at *3 (S.D. Cal. Jan. 26, 2026) ("ICE's conclusory explanation for revoking Petitioner's release 'did not offer [her] adequate notice of the basis for the revocation decision such that [she] could meaningfully respond at the post-detention informal interview." ') (quoting *Diaz v. Wofford*, Case No. 1:25CV-1079 JLT EPG, 2025 WL 2581575, at *8 (E.D. Cal. Sept. 5, 2025). Additionally, Petitioner states that his native language is Q'anjob'al, a Mayan language, and he only speaks basic Spanish and does not speak, read or write English. Pet. ¶ 61. Accordingly, the Notice of Revocation was only provided in English to a Q'anjob'al speaker. ECF No. 8 at 7. There is nothing in the record to suggest that Petitioner was able to read or understand the notice even when it was provided to him.

Finally, after re-detaining an alien who was out on supervision, ICE must "promptly" conduct "an initial informal interview" to "afford the alien an opportunity to respond to the reasons for revocation." § 241.13(i)(3). Apart from ICE not having reasons to re-detain him based on changed circumstances, Petitioner asserts that "ICE "has never conducted a meaningful informal interview, ignored two written requests by counsel to participate in that interview, and has conducted no headquarters custody review." Pet. ¶ 2. These failings, too, violated Petitioner's due process rights. *See Tran*, 2025 WL 3005347, at *3 (finding the same); *see also Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard.").

The Government does not dispute that it has failed to follow its own rules for re-detainment, instead arguing that "even assuming the agency's compliance with the relevant

regulations fell short," Petitioner has not established prejudice nor a constitutional violation. *See* Return at 5. However, courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). This is so even when, unlike here, the Government has obtained a petitioner's travel document back to his or her country of origin after their re-detainment. *See id*. at *1-6 (granting habeas and releasing the petitioner with a deportation order back on supervision when the respondents failed to comply with § 241.13(i) and § 241.4(l) despite later securing travel documents for his country of origin); *Tran*, 2025 WL 3005347, at *1-4 (same).

Because the Government failed to comply with § 241.13(i) and § 241.4(l) when they revoked Petitioner's supervised release, issuing a writ to reinstate that release is warranted.

## III. CONCLUSION

Accordingly, the Court **GRANTS** the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. The Government shall immediately release Petitioner from custody subject to the conditions of his prior release. Petitioner shall comply with all conditions that were in effect before his re-detainment. The Government **SHALL NOT** re-detain the noncitizen under 8 U.S.C. § 1231(a)(6) unless and until the Government follows all applicable statutory and regulatory procedures in a language that Petitioner can understand. By **November 16, 2026** at **12:00 p.m**., the Government must file a Notice of Compliance to confirm that Petitioner has been released, after which the Clerk will close this case.

Dated: November 13, 2026

Honorable Linda Lopez
United States District Judge